UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION



ROBERT DURST
*Plaintiff*

V.

BRIAN COLLIER, in his official capacity
as Director of the Parole Division of the
Texas Department of Criminal Justice;

RISSIE OWENS, in her official capacity
as Chairman of the Texas Board of Pardons
and Paroles;

LINDA GARCIA, in her official capacity
as a Member of the Texas Board of Pardons
and Paroles;

CASE NO. A06CA139 LY
_____

CHARLES AYCOCK, in his official capacity
as a Member of the Texas Board of Pardons
and Paroles;

JUANITA GONZALES, in her official capacity
as a Member of the Texas Board of Pardons
and Paroles;

JACKIE DENOYLLES, in her official capacity
as a Member of the Texas Board of Pardons
and Paroles; and,

JOSE ALISEDA, in his official capacity
as a Member of the Texas Board of Pardons
and Paroles,

GERALD GARRETT, in his official capacity
as a Commissioner of the Texas Board of Pardons
and Paroles,

ELVIS HIGHTOWER, in his official capacity
as a Commissioner of the Texas Board of Pardons

1

and Paroles, and

ALVIN SHAW, in his official capacity
as a Commissioner of the Texas Board of Pardons
and Paroles,
*Defendants*

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE OF SAID COURT:

COMES NOW Robert Durst, Plaintiff, in the above captioned and numbered cause and, pursuant to the Due Process and Equal Protection Clauses of the Fifth and Fourteenth Amendment to the United States Constitution, and Title 42 U.S.C. §§ 1983 and 1988, files this his Original Complaint, and in this connection respectfully shows unto the Court as follows:

### I.

### JURISDICTION

The Plaintiff's Complaint raises questions arising under the United States Constitution and federal law, and this Court has "federal question" jurisdiction pursuant to Title 28, U.S.C. § 1331. Further, the Plaintiff's Original Complaint includes claims that seek equitable, declaratory, and injunctive relief against the Defendants, over which this Court has jurisdiction under Title 28, U.S.C. §§ 1343(a) and 2201.

### II.

### PARTIES

### (A)

Plaintiff Robert Durst is a resident of the City of Houston, Harris County, Texas.

### (B)

2

1.

Defendant Rissie Owens is the Chairperson of the Texas Board of Pardons and Paroles.  She may be served at her office, located at 1300 11th Street #520, Huntsville, Texas 77342.

3.

Defendant Linda Garcia is a Member of the Texas Board of Pardons and Paroles.  She may be served at her office, located at 1212 North Velasco, #201, Angleton, Texas, 77515.

4.

Defendant Charles Aycock is a Member of the Texas Board of Pardons and Paroles.  He may be served at his office, located at 5809 S. Western #237, Amarillo, Texas 79110.

5.

Defendant Juanita Gonzales is a Member of the Texas Board of Pardons and Paroles.  She may be served at her office, located at 3408 State Hwy 36, Gatesville, Texas 76528.

6.

Defendant Jackie Denoylles is a Member of the Texas Board of Pardons and Paroles.  She may be served at her office, located at 207 E. Reagan St., Palestine, Texas 75801.

7.

Defendant Jose Aliseda is a Member of the Texas Board of Pardons and Paroles.  He may be served at his office, located at 420 Main, San Antonio, Texas 78204.

8.

Defendant Gerald Garrett is a Commissioner of the Texas Board of Pardons and Paroles.  He may be served at his office, located at 1300 11th Street #520, Huntsville, Texas 77342.

9.

Defendant Elvis Hightower is a Commissioner of the Texas Board of Pardons and Paroles. He may be served at his office, located at 3408 State Hwy 36, Gatesville, Texas 76528.

10.

Defendant Alvin Shaw is a Commissioner of the Texas Board of Pardons and Paroles. He may be served at his office, located at 3408 State Hwy 36, Gatesville, Texas 76528.

## III.

## FACTS

1.

Plaintiff is a 62 year-old male who is serving the remainder of three concurrent 5-year Texas prison sentences on supervised release, known as "mandatory supervision" authorized by Section 508.147 of the Texas Government Code, under the authority of Defendants.

2.

On October 16, 2001, a Galveston County, Texas grand jury indicted Plaintiff for the Texas Penal Code offense of Murder [1], for the killing of his neighbor, Morris Black. The State alleged that Plaintiff had murdered Mr. Black, and then disposed of the dead body by cutting it up and throwing the parts into Galveston Bay. The grand jury also indicted Plaintiff for the Texas Penal Code offense of Tampering with Evidence, for the disposal of the body.[2] Upon his release to pre-trial bond, Plaintiff left the State of Texas without permission and the Galveston grand jury again indicted him,

---

[1] TEX. PEN. CODE ANN. §19.02 (Vernon 1994).

[2] TEX. PEN. CODE ANN. §37.09 (Vernon 1994).

4

for two counts of bail jumping.[3]  On November 30, 2001, authorities arrested Plaintiff out of state

and brought him back to Texas to stand trial on the Murder indictment.  At trial, Plaintiff put forth

the defense that he was struggling with Mr. Black—in self-defense—over a gun, when the gun

accidentally discharged, resulting in Mr. Black's death.  Plaintiff's defense also put forth facts

showing that following Mr. Black's death, Plaintiff panicked and tried to conceal the accidental

death by cutting up the body and disposing of it in Galveston Bay.  The jury believed Plaintiff's

defense of accident in the course of self-defense, and acquitted him of the Murder charge on

November 11, 2003.

3.

Following Plaintiff's acquittal on the Murder charge, the Galveston County authorities

pursued the two pending Bail Jumping charges and the Tampering with Evidence charge.  On

September 24, 2004, Plaintiff pled guilty to the Bail Jumping and Tampering with Evidence

indictments, and received three concurrent 5-year sentences in the Texas Department of Criminal

Justice—Institutional Division.

4.

Within a matter of days of entering his guilty pleas, on September 14, 2004, Plaintiff was

released from the incarceration portion of these Texas sentences by operation of law [4] as a result of

his accumulated jail time credit. Plaintiff was released onto "mandatory supervision" as defined in

Section 508.147 of the Texas Government Code, because the sum of his earned jail time credit, plus

---

[3] TEX. PEN. CODE ANN. §38.10 (Vernon 1994).

[4] Plaintiff's release from the incarceration portion of his sentence occurred by operation
of law in the non-discretionary manner discussed in Ex parte Retzlaff, 135 S.W.3d 45
(Tex.Crim.App. 2004).

5

his assigned good time credit, equaled the total of his concurrent 5-year sentences. Once released onto mandatory supervision, a person is supervised just as if he had been released on parole; he must abide by specific conditions of release, and if he violates any condition he may face various sanctions up to and including revocation of his release status and return to prison. Plaintiff is required to abide by the terms of his Texas supervised release until he discharges his sentence, which will occur in November 2006.

5.

Prior to his actual *physical* release on mandatory supervision, however, Plaintiff was taken into federal custody to answer federal indictments in the Eastern District of Pennsylvania. Plaintiff ultimately pled guilty to two federal offenses, Interstate Transportation of a Firearm by a Person under Indictment [5], and Interstate Transportation and Possession of a Firearm by a Fugitive [6], and received a combined 9-month federal sentence. Both federal offenses arose from Plaintiff's possession of a firearm at the time he was arrested in Pennsylvania, in the course of his Texas Bail Jumping offense. Plaintiff remained in federal custody until July 15, 2005, when he was released on federal supervised release. Plaintiff's federal supervision is maintained under minimal supervised release conditions[7] that operate alongside, and concurrently with, his State of Texas mandatory supervision release; Plaintiff's conditions under his State of Texas release, in contrast to the minimal conditions of his federal supervision, include the most severely restrictive conditions available.

6.

---

[5] 18 U.S.C. §922(a) (2002).

[6] 18 U.S.C. §922(g)(2) (2002).

[7] Exhibit A, copy of Plaintiff's conditions of federal supervised release.

Upon his release from federal custody, Plaintiff took up residence in Houston, Texas. Since his release, Plaintiff has been required to abide by the minimal conditions of release imposed by the federal authorities and the extremely restrictive conditions of release imposed by the Texas Board of Pardons and Paroles (administered by the Parole Division of the Texas Department of Criminal Justice). On September 12, 2004—just before Plaintiff was released from the incarceration portion of his Texas sentence—the Texas Board of Pardons and Paroles voted to impose special condition "SISP," the "Super Intensive Supervision Program." Imposition of "SISP" in this case was done in violation of the Board's own administrative rules.[8] Upon Plaintiff's physical release from federal custody in July 2005, the Texas parole authorities began enforcing the "SISP" special condition.

7.

Special condition "SISP" drastically curtails the liberties of releasees subject to its condition, in contrast to the usual conditions of parole-type supervised release imposed by the Texas Board of Pardons and Paroles and administered by the Parole Division of the Texas Department of Criminal Justice. "SISP" severely restrains a releasee's usual limited liberty in several ways. A releasee subject to "SISP" must, for example: (1) submit to electronic monitoring, (2) comply with a strict minute-by-minute daily activity schedule[9], and (3) not travel within or beyond county of residence without approval of supervising parole officer, among other conditions. BPP-POL. 05–03.01.[10] The

_____

[8]Exhibit B, BPP-POL 05-03.01 (special condition "SISP").

[9]Exhibit C, example of one of Plaintiff's daily activity schedules from the week starting 12/12/2005. Note that for each day, a person subject to the schedule has one opportunity to perform "Work/Job Search" activities, and one opportunity to perform "Counseling / Education / Daily Living" activities. In other words, the "SISP" daily schedule does not provide "in-out privileges."

[10]Exhibit B, p. 2.

electronic monitoring component of "SISP" "is designed to provide for the [releasee's] accountability 24 hours a day, seven days a week." BPP-POL. 04-01.13.[11] Further, the electronic monitoring component requires the releasee "to follow a daily home confinement schedule pre-approved by the supervising parole officer." Id.[12] Absent special condition "SISP" and its electronic monitoring "component," Texas releasees subject to Defendants' authority are not required to submit to electronic monitoring, comply with a pre-approved daily activity schedule, or seek approval of their parole officer before traveling or moving about within the State of Texas.

8.

As applied to Plaintiff, special condition "SISP" and the electronic monitoring "component" are stifling. Plaintiff's parole officer requires him to submit each proposed daily activity schedule three weeks in advance. Plaintiff is normally permitted only to travel to his office, his doctor's office, his lawyer's office, the grocery store one time per week, and Temple services on Saturday morning; and Plaintiff is permitted these freedoms only as long as each destination is specifically designated, down to the minute, on his daily activity report submitted three weeks in advance. Plaintiff can request trips to clothing stores, drug stores, and office supply stores, for example; but Plaintiff must provide three weeks' advance notice of each specific store he plans to enter, and the exact times he will enter and leave each store. Even then, approval of his proposed schedule is subject to his parole officer's discretion. Plaintiff is never allowed to leave his home before 7:00 a.m., and he must always be back home by 7:00 p.m. Plaintiff is prohibited from owning or driving a car, or being in any vehicle except a commercial vehicle. Plaintiff is even prohibited from riding

---

[11]Exhibit D, BPP-POL. 04-01.13 (condition "T"), p. 1.

[12]Exhibit D, p. 1.

in his lawyer's car.[13]  Plaintiff is not allowed to pursue recreational activities, such as (1) going to

a movie, (2) going to a restaurant, (3) going to the park, (4) going to a friend's house, (5) going

jogging, or (6) going to an exercise facility.  Further, the electronic monitoring device Plaintiff must

wear is not a discreet ankle monitor, but rather, a large, stigmatizing purse-like Global Positioning

Satellite (GPS) device worn over the shoulder, outside the clothing.

9.

Special condition "SISP" practically prevents Plaintiff from operating his business

competitively.  Plaintiff is a licensed real estate broker, a licensed real estate manager, and a real

estate developer.  None of these activities can be carried on in any meaningful way under "SISP"

conditions, particularly when Plaintiff must submit his daily activity schedule to his parole officer

three weeks in advance.[14]  Plaintiff cannot possibly know, three weeks in advance, the down-to-the-

minute daily schedules of other professionals in the business such as architects, general contractors,

real estate lawyers, and real estate brokers and salespersons.  But for special condition "SISP" and

the electronic monitoring "component," and but for condition "I.S.F." described below, Plaintiff

would be able to competitively participate in large-scale real estate investment activities.

10.

---

[13]On one occasion, attorney Sean Buckley arrived at Plaintiff's residence and requested
that Plaintiff ride with him to the Parole Office so the two could discuss Plaintiff's alleged
violation of "SISP" conditions with parole officials.  Plaintiff informed attorney Buckley that he
was prohibited from riding in a private vehicle.  Plaintiff and the attorney then rode together in a
taxi procured by Plaintiff, which caused inconvenience in that Plaintiff and attorney Buckley
were precluded from engaging in any attorney-client discussions during the trip.

[14]The "SISP" conditions certainly have an equal impact upon working people such as
construction workers, whose jobs may require their ability to work late at job sites or make trips
to obtain supplies.

The Texas Board of Pardons and Paroles "SISP" policy statement quotes the Texas Legislature's intent in authorizing special condition "SISP": "The legislature intends by this measure, and by related appropriations, to enhance existing parole programs and to provide appropriate supervision, including electronic monitoring, under existing and future law *for dangerous offenders* released from the Texas Department of Criminal Justice." BPP-POL. 05-03.01[15] (emphasis added). The Board's policy statement also sets forth the criteria for imposing "SISP" on a releasee:

A.    [not relevant]

B.    "That offender must be known to have committed an act which resulted in a victim;" or

C.    "That offender must be known to have committed an act which caused bodily injury or serious bodily injury or placed an individual in danger of bodily injury or serious bodily injury;" or

D.    "That offender has threatened to commit an act that can result in a victim, bodily injury or serious bodily injury;" or

E.    "That offender has had problematic institutional adjustment, such that, their accrued good conduct time is not an accurate reflection of his or her potential for rehabilitation and whose release would endanger the public."

F.    "An offender may be referred for possible S.I.S.P. placement if TDCJ determines that he or she is a member of an organized prison gang . . ."

BPP-POL. 05-03.01.[16] These criteria are accompanied by the following relevant definitions.

---

[15]Exhibit B, p. 1

[16]Exhibit B, p. 3

"Victim" is defined in the policy as "a person who is the victim of sexual assault, kidnapping [sic], or aggravated robbery, or who has suffered bodily injury or death," and is further defined in the Texas Code of Criminal Procedure as "a person who is the victim of sexual assault, kidnaping, or aggravated robbery, or who has suffered bodily injury or death as the result of the criminal conduct of another." BPP-POL. 05-03.01[17]; TEX. CRIM. PROC. CODE ANN. art. 56.01 §3 (Vernon 2004). "Person" is defined in the Texas Penal Code as "an individual, corporation, or association." TEX. PEN. CODE ANN. §1.07 (a)(38) (Vernon 1994). An "individual" is "a human being who is alive, including an unborn child at every stage of gestation from fertilization until birth." TEX. PEN. CODE ANN. §1.07 (a)(26) (Vernon 1994). "Bodily Injury" means "physical pain, illness, or any impairment of the physical condition." BPP-POL. 05-03.01.[18]

11.

Plaintiff alleges that his criminal history does not make him a "dangerous offender" as contemplated by the Texas Legislature when it authorized special condition "SISP." More specifically, Plaintiff alleges that he does not meet the criteria used by the Texas Board of Pardons and Paroles to impose special condition "SISP" among certain of its releasees. Neither Plaintiff's Bail Jumping conviction, nor his Tampering with Evidence conviction, nor his federal convictions involved a victim as defined in the Board's "SISP" policy and the Texas Penal Code. For example, Plaintiff's Tampering with Evidence conviction clearly did not involve a victim, because the corpse[19]

---

[17]Exhibit B, p. 3.

[18]Exhibit B, p. 3.

[19]Exhibit E, Statement of Facts from <u>Morrissey v. Brewer</u> Hearing, R.R. pp. 66-67 (Judge Susan Criss' testimony that the bond jumping and tampering with evidence cases did not involve any allegation of assaultive conduct against a living person).

Plaintiff disposed of was not a "person" because it was not "alive" BPP-POL. 05-03.01[20], TEX. PEN. CODE ANN. §§1.07 (a)(26), (38) (Vernon 1994); and Plaintiff's offense conduct clearly did not cause bodily injury—serious or otherwise—because the corpse was not capable of experiencing "physical pain, illness, or any impairment of physical condition." BPP-POL. 05-03.01.[21] Further, Plaintiff has not threatened to commit an act that could result in a victim, bodily injury, or serious bodily injury; Plaintiff had no problems adjusting to the demands of the Galveston County Jail or the federal institution prior to his release that would indicate he might endanger the public; and Plaintiff is not a member of an organized gang. BPP-POL. 05-03.01.[22] Also, because a jury acquitted Plaintiff of Murder, he has not been adjudged to have committed any wrongdoing, much less "criminal conduct" in Morris Black's death that would implicate the criteria for imposing special condition "SISP." By imposing special condition "SISP" in this case, the Parole Board has violated it's own written policy, particularly the section entitled "Procedure" under BPP-POL. 05-03.01.[23]

12.

Attorney and former Member of the Texas House of Representatives Allen D. Place, Jr. has submitted an affidavit supporting Plaintiff's view of the limited applicability of special condition "SISP."[24] In 1993, Mr. Place participated in authoring the 1993 (current) Texas Penal Code, and in 1997 he authored the "SISP" provision. Mr. Place was asked to review Plaintiff's file and offer an

---

[20]Exhibit B, p. 3.

[21]Exhibit B, p. 3.

[22]Exhibit B, p. 3.

[23]Exhibit B, pp. 3-5.

[24]Exhibit F, Affidavit of Allen D. Place, Jr.

opinion as to whether Plaintiff properly falls within the criteria for special condition "SISP" and electronic monitoring.  After reviewing Plaintiff's file, Mr. Place offers the opinion that Plaintiff is not eligible for special condition "SISP," and that even if he were, his parole file does not reflect that the necessary procedures to place him on "SISP" or electronic monitoring were followed.[25]

13.

The Texas Board of Pardons and Paroles has the authority to impose special condition "T," "Electronic Monitoring," as a specific special condition, rather than imposing the much broader special condition "SISP," which includes electronic monitoring as a "component."  BPP-POL. 04-01.13.[26]  Because the electronic monitoring component is by far the most restrictive element of special condition "SISP," removing special condition "SISP" and imposing special condition "T" would provide no substantive increase in liberty for a releasee.  Plaintiff alleges that he does not fit the criteria for imposing special condition "T," for the same reasons he is ineligible for special condition "SISP."[27]

14.

On or about October 3, 2005, attorneys for Plaintiff, after requesting a personal meeting with the Director of the Parole Board, Defendant Rissie Owens, and Director of the Parole Division of the Texas Department of Criminal Justice, Defendant Bryan Collier, were allowed to meet with Defendant Collier.  During the meeting, attorneys for Plaintiff provided Defendant Collier with a

---

[25]Exhibit F.

[26]Exhibit D, p. 2.

[27]Exhibit D, p. 2.

legal brief[28] addressed to the Texas Board of Pardons and Paroles contesting special condition "SISP," specifically including the electronic monitoring "component," as applied to Plaintiff. For over two months, Plaintiff received no response. Then, on December 19, 2005, Defendant Collier provided a letter[29] to Plaintiff's counsel responding to Plaintiff's objections to special condition "SISP" and the electronic monitoring component. In the letter, Defendant Collier states: "We disagree that the circumstances surrounding the offender's instant offense does not constitute assaultive behavior."[30] However, Defendant Collier provides no additional reasoning or factual basis to explain how the circumstances surrounding either of Plaintiff's "instant offenses" of Bail Jumping or Tampering with Evidence constituted assaultive behavior. Defendant Collier also states: "In addition, we also disagree with the contention that [Plaintiff] did not meet the criteria for SISP or electronic monitoring based upon the definition of 'victim', as it applies to article 56.01 §3 of the Texas Code of Criminal Procedure since [Plaintiff] was found not guilty of murder, but was instead convicted of Tampering with Evidence."[31] Defendant Collier reasons: "Article 56.01 §3 of the Texas Code of Criminal Procedure does not state that the death of the victim has to have been caused by [Plaintiff], it states that the victim is one 'who has suffered bodily injury or death as the result of the criminal conduct of another"; and that "Since the victim, Mr. Black clearly suffered death as the result of the criminal conduct of another, then the definition does apply."[32] Again, Defendant Collier

---

[28]Exhibit G, Plaintiff's legal brief contesting special condition "SISP."

[29]Exhibit H, Letter of Defendant Collier

[30]Exhibit H.

[31]Exhibit H.

[32]Exhibit H.

14

provides no additional reasoning or factual basis to explain how Mr. Black's demonstrated cause of death—accident in the course of self-defense—constitutes "criminal conduct" as to anyone except Mr. Black himself, who was the aggressor. Defendant Collier's response concludes: "The recommendation for imposition of Special Condition "SISP" by the Parole Division was based on the totality of the circumstances surrounding the offense"; and that "Under the provisions of Art. 508.441, 508.045, 508.221 and 508.317 Texas Government Code, the Board has the authority to impose SISP Special Condition in this case and the Parole Division has the authority to request imposition of SISP in this case."[33]

15.

However, contrary to Defendant Collier's claims, the Texas Government Code does not contain an Article numbered 508.441 as cited by Defendant Collier. Article 508.045 makes no mention of conditions of release or special condition "SISP." Article 508.221 does not apply to Plaintiff by the specific terms of the article, because Plaintiff was released onto supervision by operation of law, which was not discretionary. see Ex parte Retzlaff, 135 S.W.3d 45 (Tex.Cr.App. 2004). Article 508.317 addresses "SISP," but provides that "the Texas Board of Criminal Justice shall adopt rules that establish standards for determining which inmates require intensive supervision." Clearly, none of the statutes cited by Defendant Collier provide any authority for imposition of special condition "SISP" beyond the standards of BPP-POL. 05-03.01.

16.

On December 14, 2005, Plaintiff failed to abide by his special condition "SISP" daily activity

---

[33]Exhibit H.

schedule by going to The Galleria shopping mall in Houston, without his parole officer's permission. But for special condition "SISP" and the electronic monitoring "component," Plaintiff would have been allowed to travel to The Galleria shopping mall in Houston at any time without his parole officer's permission.[34] Then, on December 16, 2005, Plaintiff failed to abide by his special condition "SISP" daily activity schedule by traveling from Houston to Galveston, Texas without his parole officer's permission. But for special condition "SISP" and the electronic monitoring "component," Plaintiff would have been allowed to travel to Galveston at any time without his parole officer's permission.[35]

17.

Defendants learned of Plaintiff's two special condition "SISP" violations[36], and after a brief investigation, took Plaintiff into custody on December 20, 2005 and initiated Morrissey v. Brewer proceedings[37] against him. Defendants scheduled a Morrissey v. Brewer revocation hearing for January 13, 2006 and provided Plaintiff with timely notice of the allegations[38] and the evidence against him. However, Defendants did not provide Plaintiff, as part of the hearing discovery

---

[34]Exhibit E, Statement of Facts from Morrissey v. Brewer Hearing, R.R. p. 38.

[35]Exhibit E, R.R. p. 38.

[36] Defendants discovered one of these violations through bizarre, yet implicitly revealing, circumstances. While at The Galleria shopping mall on December 14, 2005 in violation of his "SISP" daily activity schedule, Plaintiff encountered State District Judge Susan Criss, who is the judge who presided over Plaintiff's murder trial and acquittal. When Judge Criss learned that Plaintiff was not supposed to have been at The Galleria shopping mall, she reported her encounter to Defendants, who took action by including Plaintiff's trip to The Galleria shopping mall as one of the allegations in Plaintiff's Morrissey v. Brewer proceedings.

[37]Parole Revocation proceedings as defined by Morrissey v. Brewer, 408 U.S. 471 (1972).

[38]Exhibit I, Copy of the allegations against Plaintiff.

materials or otherwise, any meaningful notice of the basis for imposing special condition "SISP" in the first place, so as to provide Plaintiff with an understanding of how to formulate appropriate objections, if warranted, to the enforcement of the special condition. The only notice provided Plaintiff on this issue was the vague and seemingly contradictory letter provided to Plaintiff's counsel by Defendant Collier on December 19, 2005.

18.

The Defendants commenced the Morrissey v. Brewer hearing against Plaintiff on January 13, 2006, through which Defendants alleged Plaintiff violated his conditions of release by violating his special condition "SISP" daily activity schedule by 1) going to The Galleria shopping mall on December 12, 2005; and 2) traveling to Galveston on December 14, 2005. At the onset of the proceedings, Plaintiff objected to the imposition and enforcement of special condition "SISP" through oral objection[39] accompanied by a written objection and brief[40]. Plaintiff sought to introduce testimony into the record that would have supported his contention that subjecting him to special condition "SISP" (and subjecting him to potential sanction for violating the special condition) was unconstitutional. The administrative hearing officer presiding over the Morrissey v. Brewer hearing denied Plaintiff's request to introduce the testimony into the record, and denied Plaintiff a meaningful opportunity to be heard as to Plaintiff's assertion that special condition "SISP" had been unconstitutionally imposed and was being unconstitutionally relied upon as the basis for potential sanction.

---

[39]Exhibit E, R.R. pp. 12-22.

[40]Exhibit J, Copy of Plaintiff's written objection and brief.

19.

During the <u>Morrissey v. Brewer</u> hearing, Plaintiff admitted going to The Galleria shopping mall and traveling to Galveston, in violation of his special condition "SISP" daily activity schedule. The record from that hearing reflects that but for the fact that Plaintiff's trip to The Galleria and Galveston were done in violation of his special condition "SISP" daily activity schedule, the trips were otherwise completely lawful, and would have been permitted had Plaintiff not been subject to special condition "SISP" or electronic monitoring.[41]   The administrative hearing officer made a finding, based on preponderance of the evidence, that Plaintiff violated at least one condition of his parole. After concluding the hearing, the administrative hearing officer forwarded his report, which included his findings of fact and references to his rulings on Plaintiff's objections, to the Texas Board of Pardons and Paroles.

20.

On January 20, 2006, the Texas Board of Pardons and Paroles upheld the administrative hearing officer's findings and followed the recommendations of the hearing officer and parole officer by imposing sanctions on Plaintiff by ordering him to reside in an Intermediate Sanction Facility ("I.S.F.") for a period of approximately 60 days.  In doing this, the Board did not revoke Plaintiff's parole; he remained on supervised release status.  However, the "I.S.F." sanction served to further restrict Plaintiff's limited liberty even more severely than it had been restricted under special condition "SISP."  While living in an "I.S.F.", a releasee is confined to the facility and must abide by its rules 24 hours a day.  Unlike revocation of parole and return to prison, "I.S.F." is a temporary

---

[41]Exhibit E, R.R. p. 38.

sanction imposed as a condition of continued release.  If a releasee assigned to an "I.S.F.". fails to abide by the conditions of the "I.S.F.", just as if he were to fail to abide by any other condition of parole, he could again be subject to Morrissey v. Brewer proceedings, which could bring further sanction including revocation of parole and return to confinement in prison.

21.

Plaintiff remains subject to special condition "SISP."  Other than himself, Plaintiff is aware of no other releasees under Defendants' authority with non-violent or non-dangerous criminal histories (or who otherwise do not fit the criteria of BPP-POL 05-03.01) who have been subjected to special condition "SISP" and the electronic monitoring "component."

22.

Plaintiff alleges that the Defendants, in imposing and enforcing special condition "SISP," are dissatisfied with the Galveston County jury's acquittal of Plaintiff of the offense of murder, and are attempting to act as a "second jury" to effectively override Plaintiff's absolution.  The Defendants' actions become more well-defined in this regard when viewed alongside the actions of the federal authorities, who, after considering the totality of Plaintiff's criminal history (including his Galveston County cases), placed Plaintiff on minimal conditions of supervision.

# IV.

# LEGAL CLAIMS

## A.

## STATEMENT OF PLAINTIFF'S FIRST CLAIM

**Plaintiff alleges that the policies and procedures adopted and implemented by Defendants with respect to imposing special condition "SISP" on Plaintiff constitute an abuse of discretion and have deprived the Plaintiff, and will continue to deprive the Plaintiff, of his constitutional right to procedural due process in violation of the Fifth and Fourteenth Amendments to the United States Constitution. In this case, Defendants have adopted a policy (BPP 03-05.01), which defines those offenders who qualify for "SISP" conditions when released to supervision; according to the policy, Plaintiff does not qualify for imposition of "SISP."** In this connection, Plaintiff alleges that:

a)      Plaintiff's limited liberty interest in the usual freedoms allowed persons released on parole-type release has been (and will continue to be) severely affected by the Defendants' official actions;

b)      the policies and procedures adopted and implemented by the Defendants to arbitrarily deny or restrict that liberty interest of Plaintiff operate to create a constitutionally intolerable risk of an erroneous deprivation;

c)      additional procedural safeguards could easily provide Plaintiff with notice, with an opportunity to be heard, and with knowledge of the factual basis upon which the official action is undertaken, and thereby greatly reduce the risk of an erroneous

20

deprivation of such liberty interest;

d)      there is no legitimate governmental interest that outweighs the benefits of reducing the risk of an erroneous deprivation through the use of the foregoing procedural safeguards.

1.

STATEMENT OF THE LAW

A releasee's claim that he was denied procedural due process in the imposition of a condition of release will rest on two questions:  (1) whether the releasee has a liberty interest in not having the condition placed on his release; and if so, (2) whether the state provided constitutionally sufficient procedures before imposing the condition.  See, Coleman v. Dretke, 395 F.3d 216, 221 (5th Cir. 2004) cert denied 2005 LEXIS 7355 (2005).

A condition of release may present such a 'dramatic departure from the basic conditions' of a releasee's sentence that the Due Process Clause requires a state to provide some procedural protections prior to imposition.  Coleman, 395 F.3d at 222, relying on, Felce v. Fielder, 974 F.2d 1484 (7th Cir. 1992) (holding that state may not condition parole on parolee's involuntary treatment with psychotropic medication absent procedural protections). Cf. Sandin v. Conner, 515 U.S. 472, 485 (1995); Vitek v. Jones, 445 U.S. 480, 491-92 (1980).  The Due Process Clause provides releasees with a liberty interest in freedom from conditions that are "qualitatively different" from other conditions which may attend an inmate's release.  Coleman, 395 F.3d at 223 (discussing the stigma, plus the highly intrusive nature, of sex offender therapy makes it "qualitatively different" from other typical conditions of parole release); Vitek, 445 U.S. at 491-92.

21

A liberty interest may also arise from state policies or regulations. See Wilkinson v. Austin, 125 S. Ct. 2384 (2005). To determine whether a liberty interest arises from state policy or regulation, courts must determine whether the challenged condition imposes atypical and significant hardship on the releasee in relation to the ordinary incidents of the regime to which the releasee has been lawfully committed. See Wilkinson, 125 S. Ct. at 2394(whether the challenged prison condition imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life); Sandin, 515 U.S. at 484; see also, Coleman, 395 F.3d at 221, citing, Wolff v. McDonnell, 418 U.S 539, 556 (1974); see also, Morrissey v. Brewer, 408 U.S. 471, 478 (1972)(stating that parolees must abide by conditions of parole). To make this evaluation, a court must first establish the baseline from which to measure what is atypical and significant, and then evaluate whether the challenged condition presents an atypical and significant hardship in relation to the baseline. Wilkinson, 125 S. Ct. at 2394.

Once a liberty interest has been established, a court must consider three distinct factors to evaluate the sufficiency of existing procedures. Wilkinson, 125 S. Ct. at 2395, relying on, Matthews v. Eldridge, 424 U.S. 319 (1976). The court must first consider the private interest that will be affected by the official action; second the court must determine the risk of an erroneous deprivation of such interest through the procedures used; and third the court must consider the state's interest, including the function involved and fiscal and administrative burdens that the additional substitute procedural requirement would entail. Id.

The Supreme Court has consistently observed that "notice of the factual basis leading to consideration for [the challenged condition]" and "a fair opportunity for rebuttal" are the most important procedural mechanisms for purposes of avoiding erroneous deprivations. Wilkinson, 125

S. Ct. at     , see also, Greenholtz v. Inmates of Neb. Penal and Correctional Complex, 442 U.S. 1,

16 (1979); Cleveland Bd. Of Ed. v. Loudermill, 470 U.S. 532, 543 (1985); Fuentes v. Shevin, 407

U.S. 67, 80 (1972) ("For more than a century, the central meaning of procedural due process has

been clear: 'Parties whose rights are to be affected are entitled to be heard; and in order that they may

enjoy that right they must first be notified."). And, providing an inmate an opportunity for rebuttal

"safeguards against the inmate's being mistaken for another *or singled out for insufficient reason*."

Wilkinson, 125 S. Ct. at 2396(emphasis added).

2.

APPLICATION

Plaintiff has a liberty interest in not being subject to special condition "SISP." Plaintiff's

liberty interest arises from the Due Process Clause and also from state policies.

Plaintiff's liberty interest in not being subject to special condition "SISP" arises from the Due

Process Clause because the conditions of "SISP" present a "dramatic departure" from, and are

"qualitatively different" than, the basic conditions of parole supervision in Texas. See, Coleman,

395 F. 3d at 222-23; see also, Vitek, 455 U.S. at 491-92. A releasee not subject to special condition

"SISP" or its electronic monitoring "component" can, for example, make daily decisions about his

daily schedule without having to give three weeks' advance notice, leave home before 7 a.m. or after

7 p.m. as desired, own and drive a car, ride in another's car, pursue recreational activities such as

going to restaurants, exercise facilities, friends' houses, theaters, or city parks, or wear a stigmatizing

electronic monitoring device. A releasee not subject to special condition "SISP" or its electronic

monitoring "component," then, can lead a relatively normal life.

23

The constraints of "SISP," along with their collateral consequences (such as impairment of earning potential, reduction in opportunities for normal social interaction, and impairment of the ability to contract to consume or provide goods or services), make special condition "SISP" qualitatively different from the basic conditions of parole-type release in Texas.

Plaintiff's liberty interest in not being subject to special condition "SISP" also arises from state policy. In this case, Defendants have adopted a policy (BPP 03-05.01), which defines those offenders who qualify for "SISP" conditions when released to supervision; According to the policy, Plaintiff does not qualify for imposition of special condition "SISP." Special condition "SISP"and the electronic monitoring "component" impose atypical and significant hardship in relation to the "baseline" of ordinary life on parole-type release. See, Wilkinson, 125 S. Ct. at 2395, citing, Sandin, 515 U.S. at 484. Clearly, this "baseline" does not include 24-hour, 7-day-a-week accountability enforced by electronic monitor, compliance with a daily activity schedule submitted three weeks in advance, prohibition from owning a car or riding in someone else's car, and prohibition for undertaking common non-essential recreational activities.

Given Plaintiff's liberty interest in not being subject to special condition "SISP," the Court must evaluate the sufficiency of existing procedures by considering: (1) the private interest affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used; and (3) the state's interest. See, Wilkinson, 125 S. Ct. at 2395, relying on, Matthews v. Eldridge, 424 U.S. 319 (1976).

Plaintiff's private interest must be evaluated within the context of the particular system of parole-type supervised release in Texas and its curtailment of liberties. See, Wilkinson, 125 S. Ct.

24

at 2395. In this context, Plaintiff's liberty interest in determining his own daily schedule at his own convenience, not wearing a stigmatizing electronic monitor device, and being able to freely travel within and beyond his community (or even just his own front yard), are significant. These are some of the most fundamental benefits to being on parole-type supervised release in Texas as opposed to being in prison.

The risk of erroneous deprivation of Plaintiff's interest in not being subject to special condition "SISP" is exceedingly high, because the existing procedures, if any, provide neither notice of the factual basis leading to consideration for special condition "SISP," nor a fair opportunity to be heard or to rebut a recommendation for special condition "SISP." These are the most important procedural mechanisms for purposes of avoiding erroneous deprivations. See, Wilkinson, 125 S. Ct. at 2396. And, the lack of an opportunity for rebuttal endangers Plaintiff of "being mistaken for another *or singled out for insufficient reason.*" Id. (emphasis added). Plaintiff's concerns about the risk of erroneous deprivation are almost self-proving. Defendants' imposition of special condition "SISP" upon Plaintiff appears contrary to the very result called for by Defendants' own rules, contained in BPP-POL 05-03.01; Defendants' actions appear wholly unsupported by any evidence that Plaintiff committed an act which resulted in a victim; that Plaintiff committed an act which caused bodily injury or serious bodily injury or placed an individual in danger of bodily injury or serious bodily injury; that Plaintiff has threatened to commit an act that can result in a victim, bodily injury, or serious bodily injury; that Plaintiff has had problematic institutional adjustment, such that, his accrued good conduct time is not an accurate reflection of his potential for rehabilitation and whose release would endanger the public; that Plaintiff is a member of an organized prison gang, or that Plaintiff is otherwise dangerous.

The state's interest would likely be unaffected by an increase in procedure. Due to the demonstrated high risk of erroneous application of special condition "SISP," and taking into consideration the inevitable expenditure of greater resources by the state in managing releasees assigned special condition "SISP," the State would probably be well-served to institute appropriate procedures on its own, even without Plaintiff having to complain about the risk to him of an erroneous deprivation.

B.

## STATEMENT OF PLAINTIFF'S SECOND CLAIM

**The Plaintiff alleges that the actions of Defendants, with respect to imposition of special condition "SISP," have abused their discretion and deprived the Plaintiff, and will continue to deprive the Plaintiff, of his constitutional right to Equal Protection of Law guaranteed by the Fourteenth Amendment to the United States Constitution.** In this connection, Plaintiff alleges that:

1)   The Equal Protection Clause requires that all persons similarly situated should be treated alike;

2)   Defendants have intentionally, irrationally, and arbitrarily treated Plaintiff differently from others similarly situated; and,

3)   there is no legitimate governmental interest that rationally explains the different treatment accorded Defendant, a parolee with a non-violent and non-dangerous criminal history (who does not fit the criteria of BPP-POL 05-03.01), and other parolees with non-violent and non-dangerous criminal histories (or who otherwise

do not fit the criteria of BPP-POL 05-03.01).

1.

## STATEMENT OF THE LAW

A successful equal protection claim can be brought by a "class of one," where the plaintiff alleges that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.  Village of Willowbrook v. Olech, 528 U.S. 562 (2000) (plaintiff can allege an equal protection violation by asserting that state action was motivated solely by a "spiteful effort to 'get' her wholly unrelated to any legitimate state objective"); see Sioux City Bridge Co., v. Dakota County, 260 U.S. 441 (1923); Allegheny Pittsburgh Coal Co. v. Commission of Webster Cty., 488 U.S. 336 (1989).  The Supreme Court explains: "the purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the state's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents."  Olech, 528 U.S. at 563, quoting,  Sioux City Bridge Co., v. Dakota County, 260 U.S. at 445.

2.

## APPLICATION

When Defendants imposed special condition "SISP" upon Plaintiff, they intentionally and arbitrarily treated him differently from the rest of the releasees under Defendants' authority with non-violent and non-dangerous criminal histories (or who otherwise do not fit the criteria of BPP-POL 05-03.01)—who are not subject to special condition "SISP"—without a rational basis for treating Plaintiff differently.  Olech, 528 U.S. at 562.

Plaintiff alleges that the Defendants, in imposing and enforcing special condition "SISP," are dissatisfied with the Galveston County jury's acquittal of Plaintiff of the offense of murder, and are attempting to act as a "second jury" to effectively override Plaintiff's absolution. This is analogous to the "spiteful" action complained of in Olech, 528 U.S. at 565. The Defendants' actions become more well-defined in this regard when viewed alongside the actions of the federal authorities, who, after considering the totality of Plaintiff's criminal history (including his Galveston County cases), placed Plaintiff on minimal conditions of supervision.

D.

## COGNIZABILITY OF PLAINTIFF'S LEGAL CLAIMS ON §1983

**Plaintiff's legal claims are cognizable on §1983 because Plaintiff does not challenge the validity of his conviction or duration of his sentence.**

1.

STATEMENT OF THE LAW

A prisoner can bring a §1983 action as long as the action does not implicitly question the validity of conviction or the duration of sentence. Muhammad v. Close, 540 U.S. 749, 751 (2004); see also, Wilkinson v. Dodson, 544 U.S. 74 (2005)(prisoners' actions challenging state procedures used to deny parole eligibility and parole suitability could be brought under §1983 because neither claim, if successful, directly challenged the fact or duration of confinement); Heck v. Humphrey, 512 U.S. 477 (1994). For these purposes, "confinement" is defined as the confinement ordered by the original judgment of conviction, not special disciplinary confinement for infraction of rules. See, Muhammad, 540 U.S. at 752; Wilkinson, 125 S. Ct. at 2384 (inmate can thus lodge a procedural

challenge to his particular confinement in a supermax prison, without offending <u>Heck</u> and

challenging the basic fact of his overall incarceration or the duration of his sentence).

2.

APPLICATION

Plaintiff's instant action is cognizable on §1983 because Plaintiff does not challenge the

validity or duration of his sentence.  <u>See</u>, <u>Muhammad</u>, 540 U.S. at 751; <u>Dodson</u>, 544 U.S. at 74.

**V.**

**<u>RELIEF REQUESTED</u>**

In light of the foregoing facts and claims, the Plaintiff moves the Court to:

A)    Issue a temporary restraining order, effective immediately, prohibiting the
Defendants, their agents, successors, assigns, or anyone acting in concert with them,
from continuing to impose upon Plaintiff the constraints of the "SISP" special
condition of release.

B)    Issue a temporary restraining order, effective immediately, prohibiting the
Defendants, their agents, successors, assigns, or anyone acting in concert with them,
from continuing to impose upon Plaintiff the constraints of the "I.S.F." condition of
release.

C)    Set an early hearing on Plaintiff's Motion for a Preliminary Injunction, separately
filed herein, pursuant to Rule 65 of the Federal Rules of Civil Procedure, and after
such hearing, grant Plaintiff's request for a preliminary injunction;

29

C)   After full consideration of the merits of Plaintiff's claims herein:

      1)   Issue a declaratory judgment, pursuant to Title 28, U.S.C. Section 2201, that declares that Plaintiff has been unconstitutionally subjected to the requirements of special condition "SISP," in violation of the Due Process Clause of the Fourteenth Amendment of the United States Constitution, because he was denied adequate procedural safeguards including notice, an opportunity to be heard, and knowledge of the factual basis upon which an official discretionary decision is to be made, prior to denial of the liberty interests affected by special condition "SISP."

      2)   Issue a declaratory judgment, pursuant to Title 28, U.S.C. Section 2201, that declares Defendants' actions in subjecting Plaintiff to the I.S.F. (Intermediate Sanction Facility) condition of release unconstitutional and in violation of the Due Process Clause of the United States Constitution, because Plaintiff was denied adequate procedural safeguards as to the imposition of special condition "SISP."

      3)   Issue a declaratory judgment, pursuant to Title 28, U.S.C. Section 2201, that declares Defendants' actions in subjecting Plaintiff to the "SISP" special condition of release unconstitutional and in violation of the Equal Protection Clause due to their disparate treatment of

Plaintiff—a releasee with a non-violent and non-dangerous criminal history (who does not meet the criteria of BPP-POL 05-03.01)—and other releasees with non-violent and non-dangerous criminal histories (or who do not meet the criteria of BPP-POL 05-03.01), without any rational grounds related to a legitimate governmental objective.

4)   Issue a permanent injunction, pursuant to Title 28, U.S.C. Section 1343, prohibiting the Defendants, their agents, successors, assigns, or anyone acting in concert with them, from engaging in any actions intended for the purpose, or likely to cause, interference with Plaintiff's liberty interest in being free from the restraints of special condition "SISP," unless or until the Plaintiff is first provided with a hearing guided by procedural safeguards that provide Plaintiff with notice, an opportunity to be heard, and with knowledge of the factual basis upon which an official discretionary decision is to be made.

5)   Award the Plaintiff nominal damages pursuant to Title 42, U.S.C. Section 1983 for the violation of his "absolute" constitutional right to due process;

6)   Award the Plaintiff reasonable costs, and reasonable attorney's fees pursuant to Title 42, U.S.C., Section 1988, which are shown to have been necessarily incurred by Plaintiff in the prosecution of this matter; and

7)   Grant Plaintiff such other and further relief to which he may show himself entitled.

# VI.

# PRAYER

WHEREFORE, PREMISES CONSIDERED, the Plaintiff prays that process will issue requiring the Defendants to appear and answer to Plaintiff's Original Complaint, and that in due course, this Honorable Court will grant the relief requested by Plaintiff, and will grant such other and further relief to which Plaintiff may show himself entitled.


Respectfully submitted,

DEGUERIN, DICKSON, AND HENNESSY

Dick DeGuerin
Attorney-in-charge for Plaintiff
1018 Preston, 7th Floor
Houston, Texas 77002
State Bar No. 5638000
TEL:   713-223-5959
FAX:   713-223-9231

HABERN, O'NEIL, BUCKLEY & LANG, L.L.P.

Sean Buckley
Attorney for Plaintiff
710 North Post Oak Road, Suite 555
Houston, Texas 77024
State Bar No. 24660075
TEL:   713-863-9400
FAX:   713-682-5502

Wm. T. Habern
Of Counsel for Plaintiff
P.O. Box 8930
Hunstville, Texas, 77340
State Bar No. 08665500
TEL:   936-435-1380
FAX:   936-435-1089

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

## Notice of Document/Attachment(s) Not Imaged
## but Stored with Document in Case File

### See Original File to View/Copy Document/Attachment(s)

Civil Case No.          A-06-CA-139 LY

Robert Durst

VS.

Brian Collier, et. al.

Attachments to
Document #:          1

Description:          Complaint

File Date:          2/24/06

Prepared by:          af

**This sheet to be imaged as the last page.**